In the Interest of Benjamin I. VALADEZ, a Minor Child.

No. 13–97–865–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 29, 1998.

Dolores E. Garcia, Mission, pro se.

John F. Campbell, Mark W. Clemens, Campbell & Morgan, Austin, for Appellant.

George Barnes, Assistant Attorney General, Brownsville, John Robert King, McAllen, Ofelia De Los Santos, Edinburg, M. Steven Deck, Law Office of John King, McAllen, for Appellee.

Before SEERDEN, C.J., and DORSEY and YANEZ, JJ.

### OPINION

DORSEY, Justice.

Appellants, Dolores Valadez and her adult child, Benjamin, appeal a decree entered in a paternity suit holding Raul Longoria to be Benjamin's father and ordering him to pay $100,583 in retroactive child support to Dolores. By five points of error appellants challenge the award and the findings of fact and conclusions of law. Longoria conditionally appeals the award by two points of error with the request that we address his points only if we sustain appellants' points so as to require a reversal of the judgment. We overrule appellants' points of error and affirm.

Dolores married Adolfo Valadez in 1962. They had two children, Cathy and Albert, by this marriage. On March 9, 1978, Dolores gave birth to Benjamin. Although Adolfo did not sire him, he supported Benjamin from his birth until February, 1983, when he and his two children, Albert and Cathy, moved out and left the house to Dolores and Benjamin. Dolores and Adolfo divorced almost four years later in January, 1987.

The Texas Attorney General initiated this suit by filing a Petition to Establish the Parent–Child Relationship in the interest of B.I.V., a minor child. The petition alleged Raul Longoria was B.I.V.'s biological father and named Dolores as B.I.V.'s biological mother. In addition Dolores asked for affirmative relief, including current and retroactive child support.

On August 9, 1993, Longoria's attorney announced to the trial court he and the Attorney General had reached a settlement, which *did not include* Dolores. Her attorney objected to the settlement, and Longoria's attorney challenged Dolores's standing to participate in the proceedings. The trial court took the settlement under advisement.

On November 8, 1993, a final judgment was signed that denied Dolores' "motion to intervene," declared Longoria the father of Benjamin, and ordered him to pay lump sums of $37,200 in future child support and $75,000 in retroactive child support to a trust for Benjamin. Dolores appealed, this Court affirmed,[1] and the Texas Supreme Court reversed, holding Dolores had standing to assert any right she may have to retroactive child support. It remanded the case for further proceedings. *See In re B.I.V.,* 923 S.W.2d 573, 575 (Tex.1996) (per curiam).[2]

This present appeal is from the judgment that issued from the subsequent bench trial. The parties stipulated the amount of Longoria's income from 1978 to 1996. Paternity testing showed Longoria could not be excluded as Benjamin's biological father, and it showed the probability of his paternity was 99.99 percent.

After hearing the evidence the trial court rendered judgment, declaring Longoria the father of Benjamin, established the parent-child relationship between Longoria and Benjamin for all purposes, and changed Benjamin's name to Benjamin Ivan Longoria. It also ordered Longoria to pay retroactive child support calculated from the date of birth and rendered judgment for appellant

Dolores Valadez for $100,583. That amount is here contested by appellant.

The trial court found that a proper amount of child support from birth during minority until graduation from high school to be $189,600. Certain credits were allowed against this gross amount. Those credits were: (1) $28,800, representing the support provided by Adolfo, the former husband of Dolores, from the child's birth until the couple separated in 1983; $60,217 previously paid by Longoria, consisting of $13,000 paid to Dolores in 1983 and 1984, $37,200 in support previously awarded and paid, and $10,017 previously disbursed from the trust account established pursuant to a prior judgment in this case. After deducting those amounts the court rendered judgment for Dolores Valadez in the sum of $100,583 for child support of Benjamin during his minority.

■ By point two appellants contend no evidence exists to support the trial court's deviation from the child support guidelines. Their first point of error concerns the failure of the trial judge to make specific findings of fact justifying his departure from those guidelines. At the heart of both of these complaints is the contention that the child support guidelines as applied to retroactive child support are mandatory, and are to be applied with the same rigidity as they are in determining the support a minor is to receive prospectively, *i.e.,* into the future.

Chapter 160 of the family code, entitled "Determination of Parentage" provides the applicable law. Section 160.005(b) says, "On a finding of parentage, *the court may* order support retroactive to the time of the birth of the child and, on a proper showing, may order a party to pay an equitable portion of all prenatal and postnatal health care expenses of the mother and child." TEX. FAM. CODE ANN. § 160.005(b) (Vernon 1996) (emphasis added). The following subsection provides, "In making an order for retroactive child support under this section, the *court shall use* the child support guidelines provided by Chapter 154 together with any rele-

---

1. *B.I.V. v. Longoria,* 897 S.W.2d 395 (Tex.App.— Corpus Christi 1995).

2. The earlier judicial history of this dispute is found at *In re B.I. V.,* 843 S.W.2d 58 (Tex.App.— Corpus Christi, 1992), rev'd 870 S.W.2d 12 (Tex. 1994).

vant factor." TEX. FAM.CODE ANN. § 160.005(c) (Vernon 1996) (emphasis added).

Chapter 154, "Child Support", includes legislatively enacted guidelines for the setting of child support in section 154.125 and provides, in section 154.130, that the court shall make findings specified "if the amount of child support ordered by the court varies from the amount computed by applying the percentage guidelines." These sections, or their identical predecessors, have been held to mean that a trial court may deviate from the guidelines, but if it does it must make the findings specified in section 154.130(b). *Tenery v. Tenery*, 932 S.W.2d 29 (Tex.1996). Failure to make appropriate findings requires reversal or abatement. *Chamberlain v. Chamberlain*, 788 S.W.2d 455 (Tex.App.— Houston [1st Dist.] 1990, writ denied). The amount of a periodic child support payment established by the guidelines is presumed to be reasonable and to be in the best interest of the child; however, a court may determine that the application of the guidelines for periodic child support payments would be unjust or inappropriate under the circumstances. *See* TEX. FAM.CODE ANN. § 154.122 (Vernon 1996). In setting the support the child shall receive in the future, the future needs of the child are anticipated.

Regarding retroactive child support, section 154.131(a) states, "[t]he child support guidelines are intended *to guide the court* in determining the amount of retroactive child support, if any, to be ordered." TEX. FAM. CODE ANN. § 154.131(a) (Vernon 1996) (emphasis added). We agree with our sister courts that the guidelines are just that when applied to retroactive support; they are not mandatory, and sections 154.130(a)(3) & (b) requiring the court to specify why they are not being followed does not apply. *In re S.E.W.*, 960 S.W.2d 954, 955 (Tex.App.—Texarkana 1998, no writ); *In re J.H.*, 961 S.W.2d 550, 551 (Tex.App.—San Antonio 1997, no writ).

We conclude this from the language of the applicable sections (e.g., "To guide the court ..." "may order support retroactive") as did the other courts of appeal addressing this issue, together with the history and purpose of "retroactive" child support.

The child support we ordinarily deal with, that to be paid in the future, is for raising the child, to provide for clothing, housing, food, school, and the other myriad material needs of childhood. It balances the needs of the child with the ability of the care giver to pay for that child as well as other obligations. It is for the benefit of the child and seeks to meet those needs. "Retroactive child support" is a repayment of monies expended for the care of the child in the past. It represents funds the nonsupporting parent owed to the child, as well as funds owed the supporting parent to discharge his or her proportionate duty of financial support to the child. *In re B.I.V.*, 923 S.W.2d at 575. In awarding retroactive support a trial court considers not only the support the errant parent should have provided to the child, but also the right to reimbursement afforded someone who has supported the child in the meantime. *In re B.I.V.*, 923 S.W.2d at 575.

Prior to the legislative enactment of section 160.005, requiring the use of the child support guidelines in determining the amount of retroactive child support, the courts viewed the sum due up to the time paternity was determined to be solely of reimbursement. The question was how much had the mother expended on the child prior to the determination of paternity, with the burden of proof on the mother. *See Aguilar v. Barker*, 699 S.W.2d 915 (Tex. App.—Houston [1st Dist.] 1985, no writ); *Adams v. Stotts*, 667 S.W.2d 798 (Tex.App.— Dallas 1983, no writ). With the adoption of the child support guidelines and the application of them to determine the amount the supporting parent should recover from the errant one, the burden of proof on the supporting parent has been greatly eased.

■ We hold a trial court has discretion in deciding whether to award retroactive child support and in deciding the amount of the award. TEX. FAM.CODE ANN. §§ 154.131, 160.005(b), (c) (Vernon 1996). Accordingly we will not reverse the trial court's judgment absent an abuse of discretion. *In re J.H.*, 961 S.W.2d at 551. *See Cohen v. Sims*, 830 S.W.2d 285, 288 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Aguilar*, 699 S.W.2d at 918. An abuse of discretion occurs

when a court acts without reference to guiding rules or principles, or acts arbitrarily or unreasonably. *Stelly v. Papania,* 927 S.W.2d 620, 622 (Tex.1996) (per curiam). *See In re J.H.,* 961 S.W.2d at 552. A slight deviation from the guidelines will not constitute an abuse of discretion.

■ In the instant case appellants contend the trial court should have applied the percentage guidelines found in section 154.125 of the family code to determine the amount of retroactive child support. The child support guidelines in section 154.125 apply to situations in which the obligor's monthly net resources are $6,000 or less. If the obligor's monthly net resources are $6,000 or less, and the obligor is supporting one child, the court shall presumptively apply twenty percent to the obligor's net resources to determine the amount of child support. *See* TEX. FAM.CODE ANN. § 154.125(b) (Vernon 1996). Section 154.126(a) states If the obligor's net resources exceed $6,000 per month the court shall presumptively apply the percentage guidelines to the first $6,000 of the obligor's net resources. *See* TEX. FAM.CODE ANN. § 154.126(a) (Vernon 1996). Applying these rules appellants assert the trial court should have awarded $230,892 in retroactive child support.

Appellants base their figure of $230,892 on a statutory cap of $6,000 of monthly net resources, or $1,200 per month for one child from April 1978 through May 1996. However-er effective September 1, 1989 the Act of June 14, 1989, 71st Leg., R.S., ch. 617, 1989 Tex. Gen. Laws 2030, 2038 provided a statutory cap of $4,000 of monthly net resources, or $800 per month for one child. Effective September 1, 1993, the Legislature amended the percentage guidelines to apply to the obligor's monthly net resources of $6,000, rather than $4,000. *See* Act of June 18, 1993, 73rd Leg., R.S., ch. 766, 1993 Tex. Gen. Laws 2989–2999.

Because section 154.131(b) provides in ordering retroactive child support the trial court shall consider the obligor's net resources during the relevant time period, the trial court should have the discretion to apply the child support guidelines effective during the relevant time period as well. Therefore,

if the trial court applied a statutory cap of $4,000 of monthly net resources from April 1978 through August 1993 and a $6,000 statutory cap from September 1, 1993 through May 1996, Longoria's retroactive support would equal approximately $182,404. The trial court's award of $189,600 is $7,196 ($189,600—$182,404) more than what the trial court could have ordered. We hold the trial court did not abuse its discretion by awarding $189,600 in retroactive child support to Dolores. We overrule point two.

■ By point one appellants assert the trial court failed to make findings in child support order as required by section 154.130 of the family code. This section provides without regard to Rules 296 through 299, Texas Rules of Civil Procedure, in rendering an order of child support the court shall make the findings required by subsection (b) if (1) a party files a written request with the court not later than ten days after the hearing date, (2) a party makes an oral request in open court during the hearing, or (3) the amount of child support ordered by the court varies from the amount computed by applying the percentage guidelines. *See* TEX. FAM. CODE ANN. § 154.130(a) (Vernon 1996).

On August 14, 1997 Dolores filed her request for findings in child support order. On October 13, 1997 the trial court signed its findings of fact and conclusions of law. Dolores did not lodge any objection to the trial court's findings and conclusions. The rules of appellate procedure provide as a requisite to presenting a complaint for appellate review the record must show "the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint." TEX.R.APP. P. 33.1(1)(A). Having failed to preserve the alleged error for our review point one is overruled.

■ By point three appellants assert the trial court erred by giving Longoria a $28,800 credit for support Adolfo Valadez provided. The evidence showed Adolfo supported Benjamin as a family member from his birth date until February 1983, when Adolfo

moved out of the residence. Adolfo testified he spent his salary on his family which included Benjamin. He paid the household bills. He said Dolores spent her salary on herself, although he noticed she spent "quite a bit of money" on Benjamin. Dolores' testimony showed Adolfo provided no money directly to Benjamin.

Section 151.003(c) of the family code states "[a] parent who fails to discharge the duty of support is liable to a person who provides necessaries to those to whom support is owed." TEX. FAM.CODE ANN. § 151.003(c) (Vernon 1996). Thus a single parent who bears the entire financial responsibility of supporting a minor child is entitled to reimbursement from the other parent who has neglected his or her duty of support. *In re B.I.V.*, 923 S.W.2d at 575. Section 160.005(c) states a court ordering retroactive child support shall use the child support guidelines found in Chapter 154 "together with any relevant factors." TEX. FAM.CODE ANN. § 160.005(c) (Vernon 1996).

In this case Dolores did not bear the entire financial burden of supporting Benjamin. Adolfo also supported him as a family member from March 9, 1978 to February 1983, about five years. Because Dolores was not the sole supporter of Benjamin, she is not entitled to full reimbursement. The trial court properly considered Adolfo's support of Benjamin as a relevant factor in awarding Dolores retroactive child support. *See* TEX. FAM.CODE ANN. §§ 160.005(c), 154.131(b)(4) (Vernon 1996). We hold the trial court did not abuse its discretion when it awarded Longoria a $28,800 credit. We overrule point three.

■ By point four appellants assert the trial court erred in giving Longoria a $13,000 credit for money he gave to Dolores in 1983 and 1984. She argues Longoria and his wife could not have intended the $13,000 as support payments because he has at all times denied paternity. Contrary to this argument the evidence showed Longoria did not deny he was the child's father prior to the time he began paying her the $13,000.

Dolores' testimony showed Longoria paid her $13,000 during 1983 and 1984. He gave her this money in monthly payments of $1,000 per month. She understood Longoria and his wife paid her the money so she would not seek a divorce from Adolfo. However her testimony also showed Longoria always acknowledged Benjamin as his child. When she went to the hospital to give birth to Benjamin, Longoria was in constant contact with her. After he was born Longoria would come to Dolores' home during his lunch hour and visit the child. He also took Benjamin to Padre Island, the San Antonio Zoo, and to Austin. She testified Longoria knew he was his child.

The evidence showed Adolfo stopped supporting Benjamin in February 1983, and Longoria began paying Dolores that same year, earlier acknowledging he was Benjamin's father. The trial court could have reasonably concluded Longoria intended the money as support for the child. Accordingly the trial court could have applied these payments as a credit towards the award of retroactive child support. *See* TEX. FAM.CODE ANN. § 160.005(c) (Vernon 1996). We hold the trial court did not abuse its discretion by awarding Longoria a $13,000 credit. We overrule point four.

■ By point five appellants assert the amount of retroactive child support ordered by the trial court was arbitrary and unreasonable. Appellants do not challenge the methodology used to compute the retroactive child support. They complain the trial court chose to follow Longoria's suggested format, used outdated guidelines, and granted unwarranted credits.

The trial court announced its computation of retroactive support as follows: gross retroactive support—$189,600; reduction for Adolfo's contribution—$28,800; and reduction for support ordered by Judge McDonald, monies withdrawn from trust and money paid to Dolores in 1983 and 1984—$60,217. The trial court's net retroactive support award to Dolores was $100,583.

Appellants argue the amount of retroactive support should equal at least $230,892. However, appellants' calculation method did not follow the statutory caps applicable to the period in question. Appellants do not challenge the deductions for the support ordered

by Judge McDonald or the money withdrawn from the trust. The trial court calculated an appropriate amount of reimbursement and then subtracted reasonable credits from this amount. We hold the trial court did not abuse its discretion by ordering Longoria to pay appellants net retroactive support of $100,583. We overrule point five.

We AFFIRM the judgment.